**SEABOCK PRICE APC**
Dennis Price SBN 279082
Amanda Seabock SBN 289900
Christopher A. Seabock SBN 279640
117 E. Colorado Blvd., Ste. 600
Pasadena, California 91105
Phone: 323-616-0490
amanda@seabockprice.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Tonia Sartin,**<br><br>    Plaintiff,<br><br>v.<br><br>**Humphreys University,** a California Corporation;<br>**M. Elder, D.D.S., A Professional Corporation,** a California Corporation<br><br>    Defendants. | Case Number:<br><br>**Complaint for Damages and Injunctive Relief for Violations of:**<br>Americans with Disabilities Act, Unruh Civil Rights Act |

Plaintiff Tonia Sartin alleges the following upon information and belief based upon investigation of counsel, except as to her own acts, which she alleges upon personal knowledge:

## INTRODUCTION

1. Signed into law on July 26, 1990, the Americans with Disabilities Act was a landmark piece of legislation that promised equal access to disabled individuals. Hailed as a long overdue "independence day" by President George H.W. Bush at the time of signing, the law recognized that disabled Americans had been overlooked by prior civil rights laws and were entitled to independence and dignity in all aspects of society.

2. Recognizing that the ADA lacked sufficient remedies, the State of California promptly amended the Unruh Civil Rights Act to ensure those who are denied equal rights under the ADA have sufficient motivation and remedies to enforce the law.

3. However, more than 30 years later, California still has businesses in flagrant violation of the law. These are not just small or "technical" violations, but actual barriers to access. What amounts to a minor or invisible difference to those without a disability may cause difficulties, discomfort, embarrassment, or outright injury to those with disabilities.

4. Plaintiff is a disabled individual and a member of a protected class of individuals guaranteed rights under state and federal laws

5. Plaintiff visited the California Oral Surgery Center ("Center") located at or about 6529 Inglewood Ave., Ste. A-1, Stockton, California, 95207, on or about January 25, 2023, and encountered barriers to access.

6. Plaintiff brings this action against Humphreys University and M. Elder, D.D.S., A Professional Corporation for failure to design, maintain, construct, and operate the Center in compliance with applicable accessibility laws.

Complaint, California Oral Surgery and Implantolgy

## **PARTIES**

7. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of San Joaquin.

8. Defendant Humphreys University owned the real property located at or about 6529 Inglewood Ave., Stockton, California, 95207, in January 2023.

9. Defendant Humphreys University owns the real property located at or about 6529 Inglewood Ave., Stockton, California, 95207, currently.

10. Defendant M. Elder, D.D.S., A Professional Corporation, owned or operated the place of public accommodation located at or about 6529 Inglewood Ave., Ste. A-1, Stockton, California, 95207, in January 2023.

11. Defendant M. Elder, D.D.S., A Professional Corporation, owns or operates the place of public accommodation located at or about 6529 Inglewood Ave., Ste. A-1, Stockton, California, 95207, currently.

12. Every landlord, tenant, owner, or operator of a place of public accommodation is separately charged with compliance with the ADA. 28 CFR § 36.201(b). Liability for noncompliance persists regardless of any contractual apportionment of responsibility between them. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833-34 (9th Cir. 2000).

13. At all times relevant to this complaint, Defendants had and continue to have an ongoing obligation to assess, identify, and remove all barriers to access where readily achievable to do so and to implement the most accessible alternative when full compliance is not readily achievable.

14. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such defendants. Plaintiff is informed and believes that each of the defendants herein is responsible in some capacity for the events herein alleged or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the defendants are ascertained.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.,* and 28 U.S.C. § 1332.

16. This Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

17. This Court has personal jurisdiction over Defendants because they conducted and continue to conduct business in the State of California, County of San Joaquin.

18. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and Defendants are subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

19. Plaintiff has no feeling in her left leg, has limited balance, cannot walk, and uses a wheelchair (or a walker for very short distances) for mobility. She has a California disabled parking placard. Plaintiff is a member of a protected class of individuals guaranteed rights under state and federal law.

20. The Center is a facility open to the public, a place of public accommodation, and a business establishment, as those terms are understood under the Americans with Disabilities Act and Unruh Civil Rights Act.

21. Plaintiff went to the Center on January 25, 2023, with the intention to avail herself of its goods, services, privileges, advantages, or accommodations ("Amenities").

22. Unfortunately, on the date of Plaintiff's visit, the Center failed to comply with ADA and California standards as they relate to wheelchair users like the plaintiff.

23. On this occasion, Plaintiff used her wheelchair, rather than her walker, and arrived at the Center by way of a disability van provided through San Joaquin Regional Transit District.

24. The business park within which the Center is located has two entrances, one on its east side and the other on its west side.

25. Accessible entrances allow easy and safe access to businesses.

26. The east entrance is connected to the public sidewalk on Inglewood Avenue by a concrete path, which continues into and through the open-air business park.

27. The west entrance can be reached by a concrete sidewalk that runs from the public sidewalk on Inglewood Avenue, along the south side of the business park, and then turns north, where it meets the business park's west entrance.

28. There is no signage at either entrance or along the route from the public sidewalk to either entrance directing individuals with disabilities to an accessible entrance.

29. On the date of Plaintiff's visit, the disability van dropped her off on Inglewood Avenue, outside of the east entrance.

30. Because the west entrance is on the side of the business park opposite Inglewood Avenue and there is no signage indicating the presence of the west entrance, Plaintiff did not know of it and used the east entrance.

31. However, the concrete sidewalk connecting the business park to the public sidewalk on Inglewood Avenue has a running slope of 10.7%.

32. Once inside the business park, the concrete route has a running slope of 9.3%.

33. On information and belief, the route to and through the east entrance has a running slope steeper than 5% for a rise greater than 6 inches.

34. On information and belief, the route to and through the east entrance has a running slope steeper than 8.33% for a rise greater than 6 inches.

35. Despite these slopes, no handrails are provided along this route to and through the east entrance.

36. Plaintiff found these slopes to be too steep to maneuver independently and without difficulty, and required assistance from the disability van driver to travel from the public sidewalk to the Center.

37. This loss in independence resulted in Plaintiff suffering embarrassment and frustration.

38. Paths of travel inside and outside of businesses are required to be properly scoped and designed for safe use by patrons. The failure to provide accessible paths of travel impeded Plaintiff's safe navigation of the facility.

39. Despite the above, Plaintiff overcame the difficulties presented to her with the assistance of the disability van driver and arrived early at the Center for her appointment.

40. On arrival at the Center, Plaintiff was informed by the woman working at the reception desk that, despite the plaintiff having made an appointment, none was scheduled. The staff member further explained to the plaintiff that the Center would be unable to accommodate her that or another day because she would be required to stand without aid for her x-rays.

41. Plaintiff left the Center without being seen and had to make arrangements to be treated by a different oral surgeon who would accommodate her wheelchair.

42. This required Plaintiff to attend an initial visit with the other oral surgeon, as well as the procedure appointment.

43. Defendants have failed to provide and/or maintain in working and useable condition those features required to provide ready access to persons with disabilities.

44. Plaintiff personally encountered these barriers.

45. During investigation of Plaintiff's claim, additional barriers not personally acknowledged by the plaintiff but pertaining to her disability were discovered.

46. The route from the public sidewalk on Inglewood Avenue to the west entrance of the business park contains running slopes as steep as 8.6% and cross slopes as steep as 4.3% and has no handrails.

47. Accessible parking provides disabled individuals safe access to the affiliated businesses. These spaces—when properly designed—deter unauthorized individuals from parking in, or blocking access to, the parking space. The design and location of properly designed spaces provide additional access and safety.

48. There are two parking spaces at the west entrance reserved for use by individuals with disabilities, with a shared access aisle between them.

49. The parking spaces each measure approximately 108 inches in width.

Complaint, California Oral Surgery and Implantolgy

50. The access aisle measures approximately 96 inches in width.

51. The parking space on the south side of the access aisle has a running slope of 7%.

52. The access aisle has a cross slope of 2.6%.

53. The access aisle has a concrete ramp built into it.

54. The running slope of this concrete ramp is 10.5%.

55. The markings identifying the designated parking spaces and access aisle have worn away to the point they are largely unrecognizable.

56. Additionally, there is no sign indicating the location of a van-accessible parking space.

57. Finally, a doormat had been placed at the entrance to the Center. Such loose mats require wheelchair users to exercise additional caution to ensure they do not get stuck.

58. On information and belief, the above conditions currently exist or the policies that allowed them to occur have not been changed.

59. These above barriers relate to and impact the plaintiff's disability.

60. Plaintiff seeks removal of all barriers to access pertaining to her disability.

61. All of the barriers identified above are easily removed without much difficulty or expense. They are the types of barriers that patrons should expect to have been removed in the more than thirty years since the ADA became law and should be presumed readily achievable due to ease of removal. However, should full compliance not be readily achievable, there are numerous alternative accommodations that could be made to provide a greater level of access than presently exists.

62. Plaintiff intends to return to the business in the future and believes it is likely that other barriers to her patronage exist, given the obvious barriers she encountered. During litigation, Plaintiff will thoroughly investigate the property and amend the complaint to provide the full scope of remediation required. Plaintiff seeks to have all barriers related to her disability removed. See *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 653–54 (2019) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them).

Complaint, California Oral Surgery and Implantolgy

63. As the ADA has existed since 1990, Plaintiff alleges the above conditions were the result of either a policy failure or systematic negligence such that only policy modifications and regular future audits of the facility can ensure future compliance.

## I. FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Title 42 United State Code §§ 12101-12189
### (On behalf of Plaintiff and against all Defendants)

64. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

65. Under the Americans with Disabilities Act, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a). Discrimination is defined there as follows:

66. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

67. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers may be defined by failure to comply with the ADA Standards.

68. Where such barrier removal is not readily achievable, the failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative, readily achievable, methods.

69. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible,

Complaint, California Oral Surgery and Implantolgy

the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

70. When a business provides walkways, paths, or other navigable elements, it must provide accessible paths of travel. 2010 ASASAD Chapters 2, 3, & 4; 1991 ADAAG Chapters 4.1, 4.3, & 4.5.

71. Here, accessible paths of travel have not been provided in conformance with the ADA Standards.

72. When a business provides dental services, it must not refuse those services to a disabled patient on the basis of the patient's disability. 42 U.S.C. § 12182(a).

73. Here, despite providing dental services, those services were refused to the plaintiff due to her disability.

74. When a business provides parking, it must provide accessible parking. 2010 ASASAD Chapter 2 & 5; 1991 ADAAG Chapters 4.1 & 4.6.

75. Here, despite offering parking, accessible parking has not been provided in conformance with the ADA Standards.

76. In addition to offering accessible Amenities, a public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

77. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit also do not comply with the 1991 Standards. 28 CFR § 35.151(b)(4)(ii)(C).

78. Here, the failure to ensure that accessible facilities were available to and ready to be used by the plaintiff is a violation of the law.

Complaint, California Oral Surgery and Implantolgy

## II. SECOND CAUSE OF ACTION:
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### California Civil Code §§ 51-53
### (On behalf of Plaintiff and against all Defendants)

79. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

80. The Unruh Civil Rights Act ("UCRA") guarantees, among other things, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code § 51(b).

81. The UCRA provides that any violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

82. Defendants' acts and omissions, as herein alleged, have violated the UCRA by, among other things, denying, aiding, or inciting the denial of Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

83. A defendant's liability for damages for violations of the Unruh Civil Rights Act entitles a plaintiff to actual damages, as well as treble actual damages or an amount no less than the minimum statutory penalty prescribed by law, for each occasion in which the plaintiff was denied full and equal access. Cal. Civ. Code §§ 52(a), 55.56(a)-(c).

### PRAYER

In light of the above, Plaintiff prays that this Court award damages and provide relief as follows:

84. For permanent injunctive relief, compelling Defendants to remove all presently existing architectural barriers as required by the Americans with Disabilities Act and the Unruh Civil Rights Act within 90 days of judgment, or another date certain determined to be just by the Court. This shall include, but not be limited to:

    a. Providing an accessible route from the public sidewalk on Inglewood Avenue to and through the east entrance of the business park;

    b. Providing x-rays at the Center that do not require disabled patients to stand;

    c. Providing an accessible route from the public sidewalk on Inglewood Avenue to and through the west entrance of the business park;

    d. Providing accessible parking at the west entrance of the business park;

    e. Providing accessible ground surfaces at the Center.

85. To the extent that complete removal of all presently existing architectural barriers is not readily achievable, permanent injunctive relief compelling Defendants to make those Amenities available through alternative methods, including but not limited to:

    a. Evening out the slopes of the route from the public sidewalk on Inglewood Avenue to and through the east entrance of the business park to create smaller, consistent slopes instead of irregular, excessive slopes;

    b. Installing handrails along portions of the route from the public sidewalk on Inglewood Avenue to and through the east entrance of the business park where the running slope exceeds 5%;

    c. Instituting a policy of informing disabled patients of the Center, prior to their visits, of its inability to take their x-rays on site and providing alternate locations that can;

    d. Evening out the slopes of the route from the public sidewalk on Inglewood Avenue to and through the west entrance of the business park to create smaller, consistent slopes instead of irregular, excessive slopes;

    e. Installing handrails along portions of the route from the public sidewalk on Inglewood Avenue to and through the west entrance of the business park where the running slope exceeds 5%;

    f. Installing a buzzer system at the east entrance of the business park to alert the respective businesses of a disabled patron's need for assistance;

Complaint, California Oral Surgery and Implantolgy

g. If only one route to a business park entrance can be made accessible, installing directional signage indicating that route to disabled visitors.

86. For injunctive relief requiring that Defendants obtain biennial Certified Access Specialist ("CASp") architectural inspections of the subject facility to verify ongoing ADA compliance and to follow those inspections' recommendations of all readily achievable barrier removal. The first inspection shall occur within 90 days of judgment, or another date certain determined to be just by the Court.

87. For injunctive relief requiring implementation of accessibility policies and requiring annual employee training on providing full and equal access to clients or customers with disabilities. This shall be implemented within 90 days of judgment, or another date certain determined to be just by the Court.

88. For actual damages subject to proof under the Unruh Civil Rights Act.

89. For treble actual damages under the Unruh Civil Rights Act, or in no case an amount less than the statutory minimum damages prescribed by statute for each occasion Plaintiff was denied full and equal access.

90. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205 and Cal. Civ. Code § 52.

Date: April 7, 2023              SEABOCK PRICE APC

                                 _____
                                 Christopher A. Seabock
                                 Attorney for Plaintiff